John J. FOX, Plaintiff,

v.

Alfred G. BOUCHER, Defendant.

No. 84 Civ. 8223(RWS).

United States District Court,
S.D. New York.

Feb. 6, 1985.

John J. Fox, Pearl River, N.Y., pro se.

Edwards & Angell, New York City, for defendant; David M. Olasov, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendant Alfred G. Boucher ("Boucher") moved on December 13, 1984 to dismiss this action and for summary judgment. Plaintiff John J. Fox ("Fox") by his then counsel [1] wrote the court on December 11, 1984 a letter received on December 14 requesting that this action, removed from Supreme Court, Rockland County, be designated a White Plains action and transferred to that court. Upon the following findings and conclusions, summary judgment will be granted to Boucher, rendering the transfer motion moot.

**The Parties**

Fox is a New York State resident and lawyer and owns 1 St. Paul Street, in Blackstone, Massachusetts. Boucher is a resident of Bellingham, Massachusetts. He is the father of Janice C. Hogge. He has no business, residence or other connection with New York State.

**Prior Proceedings**

Boucher's daughter and her husband were month-to-month tenants in Fox's building in May, 1984. On May 15, 1984 Boucher's son-in-law was injured in a motorcycle accident, remained in a coma for five days and then died. Boucher's daughter and her husband were only twenty-three years old at the time of the husband's death, and had been married for less than two years.

Boucher's daughter moved out of the apartment by June 1, 1984 and moved back in with her family. Fox refused to return to Janice Hogge her security deposit on the apartment in the amount of $250 and suggested that her husband's death must have provided ample funds:

> I know you are going to say this is none of my G–D business, but I know your husband just died and I'm sure he must have had insurance.

Janice Hogge was unable to continue the conversation, Boucher picked up the phone, a conversation ensued. Fox refused the demand for the security deposit and Boucher ended the conversation by hanging up the phone.

Janice Hogge, acting *pro se,* filed a "Statement of Small Claim and Notice of Trial" against Fox in the Trial Court of Massachusetts, Small Claims Session, at the Uxbridge District Court. Fox served an answer and counterclaims containing an eighth affirmative defense and fourth counterclaim:

1. Counsel for Fox withdrew on December 19, 1984 and that consent is hereby approved. Fox is an attorney, formerly the Town Attorney of Orangetown, and he submitted his affidavit in opposition to Boucher's motion on December 21.

### AS AND FOR AN EIGHTH AFFIRMA-
### TIVE DEFENSE AND A FOURTH
### COUNTERCLAIM

31. On July 2, 1984 the plaintiff called the defendant, JOHN J. FOX, by telephone requesting the return of her security.

32. Defendant explained to plaintiff the substance of paragraphs "19," "21," "24," "25," and "26" [containing Fox's purported "defenses" which the court ultimately rejected] aforesaid.

33. Plaintiff's father then spoke on the telephone with said defendant who explained the substance of paragraphs "19," "21," "24," "25" and "26" aforesaid to him.

34. Both the plaintiff and her father stated to said defendant that he should pay the plaintiff since JOHN J. FOX is wealthy and is an attorney.

35. Despite said explanations by said defendant, plaintiff instituted the within lawsuit.

36. Plaintiff knew or should have known after July 2, 1984 that she had no basis for the instant litigation and that her claim was meritless and baseless.

37. Plaintiff instituted this litigation intentionally in a conspiracy with her father against the defendant, JOHN J. FOX.

38. Said act constituted a wrongful, prima facie tort.

39. The act of the plaintiff was done in an attempt to achieve a collateral advantage of blackmail and retribution against said defendant.

40. The act of the plaintiff was done in an attempt to have said defendant capitulate to avoid the harassment of traveling from New York to Massachusetts and to avoid the embarrassment of an attorney being a defendant.

41. The acts of the plaintiff violated the Criminal and Penal Law is a form of extortion.

42. As a result of the actions of said plaintiff, said defendant became tense, nervous, irritable, suffered great mental anguish, became excited, stopped enjoying life, was unable to sleep, was made to suffer and endure severe mental and physical suffering and still suffers the same and incurred special drug expenses.

43. The plaintiff in acting as she did, acted wilfully, wantonly, recklessly and maliciously.

44. Defendant, JOHN J. FOX, has been damaged in the sum of $5,000.00.

45. Defendant demands punitive damages.

On September 12, 1984 Janice Hogge's case against Fox was tried to the Trial Court of Massachusetts. At the conclusion of the trial, the presiding justice entered written findings and judgment and granted Boucher's daughter her security deposit, awarded treble damages against Fox in the amount of $809.25 and dismissed all of Fox's counterclaims, including the fourth counterclaim quoted above.

Upon leaving the courthouse Boucher had a brief exchange of words with Fox. Fox said to Boucher: "I'm going to get you for this." Boucher asked Fox if he was threatening him. Fox replied: "I'm going to get you in court."

Counsel for Fox on September 13, 1984 wrote to Boucher stating:

September 13, 1984

Mr. Alfred Boucher
887 South Main Street
Bellingham, Massachusetts 02019

Re: *Fox v. Boucher*

Dear Mr. Boucher:

I have been retained by Mr. John J. Fox to prosecute a New York State action against you for what appears to be a prima facie tort.

Under New York State's "long-arm" statutes, it is my opinion that you can be sued in the New York State Courts for the alleged improper telephone call to my client at his local office.

If you are insured, I suggest that you turn this letter over to your insurance carrier. If you are not insured, I strongly recommend that you have an attorney

contact me on your behalf or that you call me to see if an amicable disposition of this matter can be reached.

If I do not hear from you within one (1) week from the date of this letter, I shall have no alternative but to take such action as may be necessary to protect my client's interests, without further notice to you.

> Very truly yours,
> /s/
> Morton Lieb

On or about October 9, 1984 Boucher received by mail a summons with notice that he was being sued for "prima facie tort and punitive damages" in the amount of $100,000. On November 8, 1984 Boucher removed the action to this court.

Fox served his verified complaint upon Boucher on or about November 29, 1984. The verified complaint contains a single cause of action which is repeated here in full:

## CAUSE OF ACTION

4. On or about July 2, 1984, via the telephone from the State of Massachusetts to the State of New York, the defendant stated to the plaintiff that because plaintiff was rich and was a lawyer, plaintiff should return a security deposit allegedly held by the plaintiff.

5. Defendant further stated that because plaintiff was rich and was a lawyer, defendant would have a law suit brought against him in the State of Massachusetts.

6. As a result of the actions of said defendant herein, the plaintiff became tense, nervous, irritable, suffered great mental anguish, became excited, stopped enjoying life, was unable to sleep, was made to suffer and endure severe mental, emotional and physical suffering and still suffers the same and incurred physician's and drug expenses.

7. The defendant in acting as he did, acted wilfully, wantonly, recklessly and maliciously.

8. Plaintiff demands punitive damages.

The only factual dispute gleaned from the affidavits is whether or not it was Boucher or his daughter who stated in the July 2, 1984 conversation that Fox was rich and a lawyer and should return the security deposit. Boucher asserts it was his daughter's statement but this issue for the purposes of this motion will be resolved against him as the moving party.

## Jurisdiction

While diversity jurisdiction has been established, personal jurisdiction has not. Fox seeks to invoke New York's long-arm statute, CPLR § 302, claiming that the telephone call into New York during which Boucher called Fox a rich lawyer constituted a prima facie tort giving rise to jurisdiction. No cases are cited to support the proposition. A telephone call to New York from another state failed to establish New York jurisdiction in *Sterling Nat. Bank v. Southern Scrap Export Co.*, 468 F.Supp. 1100, 1106 (S.D.N.Y.1979); *Rainbow Ind. Products v. Haybuster Mfg., Inc.*, 419 F.Supp. 543, 546 (E.D.N.Y.1976); and *Concrete Detailing Services, Inc. v. Thomsson Steel Co., Inc.*, 411 F.Supp. 1021, 1022–23 (S.D.N.Y.1976). Moreover, the circumstances under which Boucher spoke for a few moments on the phone to Fox clearly would not satisfy the "minimum contacts" test for a jurisdiction under the due process clause of the Constitution. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 158–159, 90 L.Ed. 95 (1945). Accordingly, this court has no jurisdiction over defendant Boucher.

## Collateral Estoppel

"The doctrine of collateral estoppel, a narrower species of *res judicata*, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunal or causes of action are the same." *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 478 N.Y. S.2d 823, 826, 467 N.E.2d 487, 490 (Ct.App.

1984); *Temple v. New York*, (slip op. August 9, 1984, 83 Civ. 7116, S.D.N.Y.).

 Plaintiff's verified complaint purportedly alleges that Boucher has committed a prima facie tort under New York law by calling Fox a rich lawyer (though any words to this effect were said by Boucher's daughter). The New York Court of Appeals has very recently restated the rule that "prima facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its own legs." *Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 470, 469 N.E.2d 1324 (Ct. App.1984), *quoting, Belsky v. Lowenthal*, 62 A.D.2d 319, 405 N.Y.S.2d 62 (1st Dept. 1978), *aff'd*, 47 N.Y.2d 820, 418 N.Y.S.2d 573, 392 N.E.2d 560 (1979).

 Not every statement that wounds is tortious. Although Fox seeks to validate his prima facie tort cause by setting forth special damages to comply with *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 398 N.Y.S.2d 864, 368 N.E.2d 1230 (Ct.App. 1977), the damages claimed are for cough syrup on August 7, eyedrops on October 8 and a decongestant on November 17, for a grand total of $10.40. That constitutes sham.

Judgment will be entered dismissing the complaint with costs to Boucher. Pursuant to Rule 11 as an appropriate sanction, reasonable attorney's fees in the amount of $3,000 will also be assessed.

IT IS SO ORDERED.